Filed 5/27/22  P. v. Struggs CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>CEDRIC LYNN STRUGGS,<br><br>Defendant and Appellant. | F082234<br><br>(Super. Ct. No. SC021518B)<br><br>**OPINION** |

## THE COURT*

APPEAL from a judgment of the Superior Court of Kern County.  Michael G. Bush, Judge.

Vanessa Place, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Christina H. Simpson and Eric L. Christoffersen, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

\*       Before Poochigian, Acting P. J., Meehan, J. and Snauffer, J.

# INTRODUCTION

In 1981, a jury convicted petitioner Cedric Lynn Struggs[1] with the first degree murder (Pen. Code,[2] § 187, subd. (a); first count)[3] of Alfred Joe Dishman. For this offense, the trial court sentenced petitioner to a term of 25 years to life with an additional one-year term for a firearm enhancement (§ 12022, subd. (a)). (*People v. Struggs* (Jan. 24, 1983, 15006) [nonpub. opn.].)

In 2019, petitioner filed a petition for resentencing on his murder conviction pursuant to section 1170.95. After conducting an evidentiary hearing, the trial court denied relief on the ground petitioner was a major participant in the offense who acted with reckless indifference to human life, a disqualifying factor pursuant to section 1170.95.

On appeal, petitioner contends the trial court erred in applying a "sufficiency of the evidence" standard at the section 1170.95, subdivision (d) evidentiary hearing. The People concede error. We accept the People's concession and reverse.

Petitioner additionally argues the court erred in considering the preliminary hearing transcript and hearsay contained within our opinion in petitioner's direct appeal, and that the evidence presented at the evidentiary hearing was insufficient to support a finding that he exhibited reckless indifference to human life. However, in light of our disposition, we conclude these issues are moot.

---

[1] Petitioner's true name is "Cedric Lynn Veasey."

[2] All further statutory references are to the Penal Code unless otherwise specified.

[3] Petitioner was convicted of additional offenses and enhancements, as described below.

## FACTUAL AND PROCEDURAL BACKGROUND

We provide a brief summary of the facts from the nonpublished opinion in petitioner's direct appeal.[4]

On July 16, 1980, Nettie S.[5] and Dishman opened the Hudson Oil gas station in Bakersfield, California. Three men entered the office of the Hudson Oil gas station. One of the men pointed a small revolver at Dishman demanding money. Dishman placed his arm over the money bags and the gunman fired a bullet into his chest. Dishman died immediately. As the robbers ran out, the gunman shot Nettie in the right shoulder. Nettie survived. Approximately $2,500 was taken by the robbers. The perpetrators later were identified as Ronald Gene Robinson, Phillip Carter, and petitioner, with Robinson acting as the shooter. (*People v. Struggs*, *supra*, 15006.)

On September 16, 1980, the Kern County District Attorney filed an information charging petitioner with the first degree murder of Dishman (§ 187, subd. (a); first count), with the special circumstances that the murder was committed in the commission or attempted commission of robbery (§ 190.2, former subd. (a)(17)(i)) and burglary (§ 190.2, former subd. (a)(17)(vii)), along with a firearm enhancement (§ 12022, subd. (a)); assault with a deadly weapon, to wit: a .22-caliber revolver (§ 245, former subd. (a); second count (Nettie)); robbery (§ 211; third count (Dishman & Nettie)) with a firearm enhancement (§ 12022, subd. (a)); and burglary (former § 459; fourth count) with a firearm enhancement (§ 12022, subd. (a)).

On February 27, 1981, a jury convicted petitioner of first degree murder (§ 187, subd. (a); first count), assault with a deadly weapon (§ 245, former subd. (a); second count), robbery (§ 211; third count), and burglary (former § 459; fourth count) and found

---

[4] We provide these facts for background purposes only. We do not rely on these facts in resolving the issues presented in this appeal. (See § 1170.95, subd. (d)(3).)

[5] Pursuant to California Rules of Court, rule 8.90, we refer to some persons by their first names. No disrespect is intended.

true all enhancements and special circumstances. On March 27, 1981, the trial court struck the special circumstances and sentenced petitioner on the first count to a term of 25 years to life, plus a consecutive one-year term for the firearm enhancement (§ 12022, subd. (a)). On the second count, the trial court sentenced petitioner to the upper term of four years, but stayed the term pending completion of the sentence on the first count. On the third count, the trial court sentenced petitioner to the upper term of five years, but stayed the term pending completion of the sentence on the first count. On the fourth count, the trial court sentenced petitioner to the upper term of three years, but stayed the term pending completion of the sentence on the first count. The aggregate term to be served was 26 years to life.

On appeal, the Court of Appeal affirmed. (*People v. Struggs*, *supra*, 15006.)

On February 14, 2019, petitioner, in propria persona, filed a petition for resentencing on his murder conviction pursuant to section 1170.95. In the form petition, petitioner stated a complaint, information, or indictment was filed against him that allowed him to be prosecuted under a theory of felony murder or murder under the natural and probable consequences doctrine; he was convicted of first or second degree murder at trial; and he could not now be convicted of first or second degree murder because of changes made to sections 188 and 189, effective January 1, 2019. He also requested the court appoint counsel during the resentencing process and stated that he was not the actual killer; did not, with the intent to kill, aid, abet, counsel, command, induce, solicit, request, or assist the actual killer in the commission of murder in the first degree; was not a major participant in the felony or did not act with reckless indifference to human life during the course of the crime or felony; and that the murder victim was not a peace officer acting in the performance of his or her duties.[6]

---

[6] Petitioner also argued that Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Senate Bill No. 1437) applies to his case because he did not participate in the underlying crime as the actual killer, nor did he intentionally aid, abet, counsel, command, induce, solicit,

4.

On February 22, 2019, the trial court appointed the Kern County Public Defender's office to represent petitioner. The People subsequently filed a motion to dismiss the petition on the ground that Senate Bill No. 1437 is unconstitutional. Petitioner, through his counsel, filed a reply arguing that Senate Bill No. 1437 is constitutional. Petitioner then filed a supplemental reply making additional arguments in support of Senate Bill No. 1437's constitutionality. The People then filed an opposition to the petition on the merits. The trial court subsequently denied the People's motion to dismiss. Petitioner then filed a reply on the merits of the petition, arguing that he is entitled to resentencing under section 1170.95.

On August 12, 2020, the trial court held a hearing on the petition. The court provided its tentative ruling that petitioner had made a prima facie case because he "participated in the planning of the robbery, but didn't look like, in this case, they were planning on murdering." The court further stated petitioner was not the actual shooter or murderer. The prosecutor agreed petitioner was not the actual killer, and pointed out that the special circumstances were found true but were stricken. The prosecutor also noted that, due to the nature of the jury instructions given, the "normal ruling regarding the special circumstances does not apply." The court then found that a prima facie case had been made and ordered that the matter be set for an evidentiary hearing.

The matter came on for an evidentiary hearing on November 23, 2020. The court stated its understanding that the People "do have the burden of proof beyond a reasonable doubt." The court also noted that the parties had been unable to obtain the complete jury trial transcripts, and disagreed as to whether the court could consider the preliminary hearing transcripts. The People argued the preliminary hearing transcript was admissible as reliable hearsay. As to the burden of proof, the People argued:

---

request, or assist the actual killer. Petitioner also challenged the credibility of evidence that was introduced against him at his prior jury trial, and alleged errors in jury selection as well as juror misconduct.

> "The burden of proof I have is to establish beyond a reasonable doubt that the evidence supports the – would support the conviction of [petitioner] and would support the assertion that he was a major participant acting with reckless disregard for human life. The Court's burden [at the hearing] is the same as the burden of a motion for a new trial or the appellate reviewing a case for sufficiency of the evidence. . . . [B]asically what the burden boils down to is I have to present enough to the Court that the Court can say, reviewing the whole record and all that's presented, that a reasonable jury could find beyond a reasonable doubt that [petitioner] was a major participant acting with reckless disregard for human life."

The prosecutor argued the testimony presented at trial, as included in the opinion from petitioner's appeal, was sufficient to meet that burden.

Petitioner argued the preliminary hearing transcript was not admissible but that the court could rely on a statement of facts from an appellate court decision. With regard to the burden of proof, petitioner argued "the prosecutor must prove beyond a reasonable doubt each element of first- or second-degree murder under the current law in order to establish ineligibility . . . ."

After hearing argument, the trial court determined that it could consider the preliminary hearing transcript. As to the burden of proof, the court agreed with the People and stated:

> "And I do believe – obviously we all agree – the People have the burden beyond a reasonable doubt, and I think [the prosecutor] is right that I have to consider whether a reasonable – much like the motion for a new trial, whether a jury – there's evidence that a reasonable jury could find beyond a reasonable doubt that the [petitioner] is not eligible."

The trial court then proceeded to take evidence and hearing argument, before standing in recess.

On December 18, 2020, the parties appeared in court for a ruling on the petition. After hearing additional argument, the trial court denied petitioner's section 1170.95 resentencing petition. Specifically, the trial court stated:

> "The People, of course, have the burden of proof beyond a reasonable doubt. There's been a lot of cases in a short amount of time, but

6.

I think that's the burden to prove that the [petitioner] acted in a way that he would not be eligible for the petition. I realize that the People and the defense and the Court is at a disadvantage because we don't have a copy of the trial transcript. I wish – I think we probably – I wish there was one, but there's not. I'm going to rely specifically on the appellate opinion on this case; although not published, it's part of the record.

"I note at page 4 of that opinion . . . [a]bout six lines down, the Court of Appeal[] is referencing Witness Hickman's testimony. He said – this is what they wrote: '[Petitioner] told Hickman he and his friends originally had gone to the station to scare the attendant, snatch the money, and run.' What I take with that, when coupled with other evidence, they went there to scare the attendant by having a gun. I don't think there's any question, certainly proof beyond a reasonable doubt, that [petitioner], knew that the gun was going to be used. That's how they were going to scare the attendant. I think to suggest [petitioner] – now, we don't know, we have no idea what role he had in supplying or using lethal weapons. We have no idea who supplied the weapon. We know later on it was sold or given to some other folks, but certainly he knew a weapon was going to be used. That's how they are going to scare the victims.

"At page 7, the Court of Appeal states: 'Witness [Parker] shared a cell' – excuse me. Let me start over. 'Witness [Parker] shared a jail cell with [petitioner]. [Petitioner] told him in specific detail of the planning and execution of the murder/robbery and described their escape.' End of that. There's of course – the People have argued that these – [petitioner] and his cohorts watched this gas station for a couple months and were in a hotel room and really planned this out. While the Court of Appeal's opinion does not state what those specific details were in this paragraph, that corroborates what [Parker] said and other evidence – other evidence. I think we have a portion of his trial testimony. So I do believe that the evidence supports a finding that the [petitioner] and his two co-[participants] or – staked this gas station out and knew exactly what they were doing. They went over there with a gun to rob those folks. They knew when the money would be there, and that's what they are going to do.

"So when you look at the factors, what role did the [petitioner] have in planning the criminal enterprise that lead to one or more deaths? Very involved. He was involved in the planning.

"What role did the [petitioner] have in supplying or using lethal weapons? I don't know if he supplied it, but he certainly knew somebody was going to use the weapon.

7.

"What awareness did the [petitioner] have of particular dangers posed by the nature of the crime, weapons used, or past experience or conduct of the other participants? It doesn't take – anyone knows if you commit a robbery with a gun, there's dangers. I think that can be stated – take judicial notice of that. He knew the weapon was going to be used. We don't really know, even though he was going with a cousin, we really don't know what the cousin's past conduct has been. However, clearly, the [petitioner] knew that this was dangerous activity, especially when using a gun.

"Was the [petitioner] present at the scene of the killing? Yes. In a position to facilitate or prevent the actual murder? I think factually it may have happened so quickly, the first shot that killed the clerk, I don't know that he could have stopped that because it happened so quickly.

"And did his or her own actions or inaction play a particular role in the death? Well, participating in this planning a murder – planning a robbery with a gun, yeah. I think that his action did play a role in this death.

"What did the [petitioner] do after lethal force was used? Well, he ran just like everybody else ran. And they didn't – he didn't call 911. He didn't call the police. He didn't go confess. He made up a story about being in Fresno and having somebody rent his room. They got the money. Gave some money to his mom. I believe he was the [individual] who did that.

"So I think that it's clear that [petitioner] was a major participant, and he acted with reckless indifference to human life.

"The other factors, really the same factors, but I'll note in [*People v. Banks* (2015) 61 Cal.4th 788] they talk about knowledge of weapons. He knew they were going to be used.

"Physical presence. Yes. He was there. The felony was short, but I don't know of a long felony, a long robbery. Robberies are by nature short. They sometimes last less than a minute.

"His knowledge of his cohorts likelihood of killing again. We really don't know what he knew about the co-[participant], even though they were cousins.

8.

"And his efforts to minimize the risk of the violence during the felony. He didn't do anything to minimize any risk. He went with this other guy knowing he had a gun.

"Therefore, I think the People have met their burden. The petition is denied."

A timely appeal followed.

## DISCUSSION

### I.  Applicable Law

Effective January 1, 2019, the Legislature passed Senate Bill No. 1437 "to amend the felony murder rule and the natural and probable consequences doctrine . . . to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f).)  The bill accomplished this task by adding three separate provisions to the Penal Code. (*People v. Gentile* (2020) 10 Cal.5th 830, 842 (*Gentile*).)  First, to amend the natural and probable consequences doctrine, the bill added section 188, subdivision (a)(3), which requires a principal to act with malice aforethought before he or she may be convicted of murder. (§ 188, subd. (a)(3); accord, *Gentile*, at pp. 842-843.)  Second, to amend the felony-murder rule, the bill added section 189, subdivision (e):

> "A participant in the perpetration or attempted perpetration of [qualifying felonies] in which a death occurs is liable for murder only if one of the following is proven:  [¶]  (1) The person was the actual killer.  [¶]  (2) The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree.  [¶]  (3) The person was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2."[7]  (§ 189, subd. (e); accord, *Gentile*, at p. 842.)

---

[7] Additionally, section 189 was amended to allow for felony-murder liability where the victim is a peace officer. (§ 189, subd. (f); accord, *People v. Daniel* (2020) 57 Cal.App.5th 666, 672.)

9.

Finally, the bill added section 1170.95 to provide a procedure for those convicted of a qualifying offense "to seek relief under the two ameliorative provisions above." (*Gentile*, at p. 843.) This procedure is available to persons convicted of "felony murder or murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, attempted murder under the natural and probable consequences doctrine, or manslaughter." (§ 1170.95, subd. (a).)

"Section 1170.95 lays out a process" for a person convicted of one of the aforementioned offenses "to seek vacatur of his or her conviction and resentencing." (*Gentile*, *supra*, 10 Cal.5th at p. 853.) First, an offender must file a petition in the sentencing court averring that:

> "(1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder, murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, or attempted murder under the natural and probable consequences doctrine[;]

> "(2) The petitioner was convicted of murder, attempted murder, or manslaughter following a trial or accepted a plea offer in lieu of a trial at which the petitioner could have been convicted of murder or attempted murder[; and]

> "(3) The petitioner could not presently be convicted of murder or attempted murder because of changes to Section 188 or 189 made effective January 1, 2019." (§ 1170.95, subd. (a)(1)-(3); see § 1170.95, subd. (b)(1)(A); accord, *People v. Lewis* (2021) 11 Cal.5th 952, 959-960 (*Lewis*).)

Additionally, the petition shall state "[w]hether the petitioner requests the appointment of counsel." (§ 1170.95, subd. (b)(1)(C).)

If a petition fails to contain the required information and the information cannot be "readily ascertained" by the court, the petition may be denied without prejudice to the filing of another petition. (§ 1170.95, subd. (b)(2).) Otherwise, counsel must be

appointed, if requested. (§ 1170.95, subd. (b)(3).) The prosecutor must file a response and the petitioner may file a reply. The trial court must then hold a hearing to determine if the petitioner has made a prima facie showing that he or she is entitled to relief. (§ 1170.95, subd. (c); accord, *Lewis*, *supra*, 11 Cal.5th at pp. 961-963, 967.) In making this determination, the court may rely on the record of conviction. (*Lewis*, at pp. 970-971.) The record of conviction includes, but is not limited to, jury instructions and verdict forms. (See generally *id.* at p. 972.) However, the prima facie inquiry is limited and, at this stage of the proceedings, the court "should not engage in 'factfinding involving the weighing of evidence or the exercise of discretion.' " (*Id.* at pp. 971-972.)

If the court determines the petitioner has met his or her prima facie burden, "the trial court must issue an order to show cause and hold a hearing to determine whether to vacate the murder[, attempted murder, or manslaughter] conviction and to resentence the petitioner on any remaining counts." (*Gentile*, *supra*, 10 Cal.5th at p. 853; accord, § 1170.95, subds. (c), (d)(1).) At the hearing, the prosecution must "prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing." (§ 1170.95, subd. (d)(3).) The prosecutor and the petitioner may offer new or additional evidence to meet their respective burdens. The admission of evidence at the hearing is governed by the Evidence Code. However, the court also "may consider evidence previously admitted at any prior hearing or trial that is admissible under current law, including witness testimony, stipulated evidence, and matters judicially noticed," as well as the "procedural history of the case recited in any prior appellate opinion." (§ 1170.95, subd. (d)(3).) Hearsay evidence that was admitted in a preliminary hearing pursuant to subdivision (b) of section 872 is inadmissible at the evidentiary hearing, unless made admissible by another exception to the hearsay rule. (§ 1170.95, subd. (d)(3).)

**II.    The Section 1170.95, subdivision (d) Evidentiary Hearing.**

On appeal, petitioner contends the trial court erred in applying a "sufficiency of the evidence" standard at the section 1170.95, subdivision (d) evidentiary hearing. The People concede error. We accept the People's concession and reverse.

Section 1170.95, subdivision (c) states that, "[a]fter the parties have had an opportunity to submit briefings, the court shall hold a hearing to determine whether the petitioner has made a prima facie case for relief. If the petitioner makes a prima facie showing that the petitioner is entitled to relief, the court shall issue an order to show cause" and set it for an evidentiary hearing. (*Ibid.*) At the evidentiary hearing:

> "[T]he burden of proof shall be on the prosecution to prove, *beyond a reasonable doubt*, that the petitioner is guilty of murder or attempted murder under California law as amended by the changes to Section 188 or 189 made effective January 1, 2019. The admission of evidence in the hearing shall be governed by the Evidence Code, except that the court may consider evidence previously admitted at any prior hearing or trial that is admissible under current law, including witness testimony, stipulated evidence, and matters judicially noticed. The court may also consider the procedural history of the case recited in any prior appellate opinion. However, hearsay evidence that was admitted in a preliminary hearing pursuant to subdivision (b) of Section 872 shall be excluded from the hearing as hearsay, unless the evidence is admissible pursuant to another exception to the hearsay rule. The prosecutor and the petitioner may also offer new or additional evidence to meet their respective burdens. *A finding that there is substantial evidence to support a conviction for murder, attempted murder, or manslaughter is insufficient to prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing.* If the prosecution fails to sustain its burden of proof, the prior conviction, and any allegations and enhancements attached to the conviction, shall be vacated and the petitioner shall be resentenced on the remaining charges." (*Id.* at subd. (d)(3), italics added.)

At this hearing, the trial court acts as the finder of fact when determining whether the prosecution has met its burden beyond a reasonable doubt. (*Ibid.*; see *Gentile, supra*, 10 Cal.5th at p. 855 ["section 1170.95 requires the superior court to

determine on an individualized basis, after considering any new or additional evidence offered by the parties, whether the [petitioner] is entitled to relief"].)

At the time the parties filed their respective briefs, there was a split of authority in the Courts of Appeal as to the prosecution's burden of proof at the section 1170.95, subdivision (d) evidentiary hearing. (See *People v. Duke* (Sept. 8, 2020) B300430, opn. ordered nonpub. Nov. 23, 2021, S265309 ["To carry its burden, the prosecution must . . . prove beyond a reasonable doubt that the defendant *could* still have been convicted of murder under the new law – in other words, that a reasonable jury could find the defendant guilty of murder with the requisite mental state for that degree of murder. This is essentially identical to the standard of substantial evidence . . . ."]; but see *People v. Lopez* (Oct. 30, 2020) H047254, opn. ordered nonpub. Dec. 22, 2021, S265974 ["[W]e hold that to establish a petitioner's ineligibility for section 1170.95 relief . . . the prosecutor must prove beyond a reasonable doubt the elements of first or second degree murder under the current law."].) Since that time, the Legislature passed Senate Bill No. 775 (2020-2021 Reg. Sess.) which clarified that that the prosecutor's burden of proof at a section 1170.95 evidentiary hearing is to prove the defendant's guilt beyond a reasonable doubt and that a finding there is substantial evidence to support a conviction is insufficient to meet this burden. (Sen. Bill No. 775 (2021-2022 Reg. Sess.); Stats 2021, ch. 551, §§ 1, subd. (c), 2, subd. (d)(3); § 1170.95, subd. (d)(3).)

Here, both parties agree the trial court erred in requiring the People to meet the burden of "sufficiency of the evidence," rather than the burden of beyond a reasonable doubt, which is required at the section 1170.95, subdivision (d) evidentiary hearing. Prior to the hearing, the People argued, "[t]he Court's burden . . . is the same as the burden of a motion for a new trial or the appellate reviewing a case for sufficiency of the evidence" and the trial court agreed when it stated "I think [the prosecutor] is right that I have to consider whether a reasonable – much like the motion for a new trial, whether a jury – there's evidence that a reasonable jury could find beyond a reasonable doubt that

13.

the [petitioner] is not eligible." (See *People v. Dickens* (2005) 130 Cal.App.4th 1245, 1252 [In a motion for a new trial, "[i]f the court finds that the evidence is *not sufficiently probative* to sustain the verdict, it must order a new trial" (italics added)].) As the People correctly note, the trial court does not appear to have acted as an independent fact finder on the contested issues. (See § 1170.95, subd. (d)(3).) The trial court, at the section 1170.95, subdivision (d) evidentiary hearing, was required to independently consider admissible evidence that was admitted at any prior hearing or trial and conclude whether the People proved beyond a reasonable doubt petitioner is guilty of murder under the law as amended by Senate Bill No. 1437. (§ 1170.95, subd. (d)(3).) The trial court did not do this. The trial court erred in failing to require the People to prove beyond a reasonable doubt at the section 1170.95, subdivision (d) evidentiary hearing that petitioner is guilty of murder. Accordingly, we must reverse and remand for further proceedings.[8] We express no opinion on the merits of the petition.

## DISPOSITION

The December 18, 2020 order denying petitioner's section 1170.95 petition is reversed and the matter is remanded for further proceedings under section 1170.95, subdivision (d), in light of the principles set forth herein.

---

[8] We do not address petitioner's further arguments that (1) the trial court erred in considering the preliminary hearing transcript at the evidentiary hearing; (2) that the trial court erred in considering hearsay within the prior appellate opinion; and (3) that there is insufficient evidence that petitioner exhibited reckless indifference to human life. These claims are moot in light of our disposition. Additionally, on remand, the admissibility of the preliminary hearing transcript and prior appellate opinion will be governed by section 1170.95, subdivision (d)(3), as amended by Senate Bill No. 775 (2021-2022 Reg. Sess.).